CATALINO RAMOS GÓMEZ, Plaintiff, Counter-Defendant and Appellant, *v.* PEDRO RÍOS RODRÍGUEZ, Defendant, Counter-Plaintiff, and Appellee.

No. 11302. Argued June 1, 1955.—Decided August 16, 1955.

*J. M. Toro Nazario* for appellant. *Gloria M. Mimoso de Laguna* for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Catalino Ramos Gómez brought an action of revendication and for other relief against Pedro Ríos Rodríguez in

the Caguas Part of the Superior Court, claiming to be the owner of certain property of six (6) cuerdas situated in the ward of Borinquen of Caguas, the possession of which is being held by defendant. The latter answered the complaint alleging that he is the actual and sole owner of the property, and in turn filed a counterclaim requesting the cancellation of the registration of the title appearing in the Registry of Property in favor of plaintiff.

The parties submitted the case on the admissions and on the evidence offered at a pre-trial conference, and also on the documentary evidence presented in an action of unlawful detainer prosecuted between the same parties in the same court. Thereafter the court entered judgment dismissing the complaint and sustaining the counterclaim, after making the following

### "Findings of Fact:

"1. That record is entered in favor of plaintiff, Catalino Ramos Gómez, at page 191 reverse, volume 159 of Caguas, property No. 4825, in the Registry of Property of Caguas, Puerto Rico, of the property described as follows:

"Rural: Parcel of land of six cuerdas, equivalent to two (2) hectares, thirty-five (35) ares, and eighty-two (82) centiares, situated in the ward of Borinquen of the Municipal District of Caguas, Puerto Rico. It is bounded on the East by the Heirs of Tirado, on the North and West by Miguel Ayala, and on the South by Cirilo Ríos. It comprises two houses constructed of native and foreign wood, zinc roofed.

"2. According to the Registry of Property of Caguas, plaintiff acquired the above-described property by inheritance from his late father, Prudencio Ramos Rodríguez, who in turn acquired it by purchase from Gerardo Calderón by deed No. 15 of March 29, 1930, executed in Caguas, Puerto Rico, before 1931, in the Registry of Property of Caguas, at page 189 reverse, volume 159, property No. 4825.
Notary José A. Vargas, which was recorded on February 19,

"3. Prudencio Ramos Rodríguez acquired the property subject to a mortgage in favor of José Rivas Soto, which was

recorded on January 25, 1930, in the Registry of Property of Caguas, Puerto Rico, at page 240, volume 157 of Caguas, the date of maturity being July 24, 1930.

"4. The mortgage having become due and not satisfied, the mortgagee, Julio Rivas Soto, filed a foreclosure proceeding on September 4, 1930, in the former District Court of Humacao, and served notice on Domingo García and his wife, Joaquina Rivera, the sole owners according to the Registry of Property. Subsequently, and while the mortgage foreclosure proceeding was pending, notice was served on Gerardo Calderón, who recorded his title on September 5, 1930, after having acquired the same by purchase from the spouses García Rivera under date of February 27, 1930, by deed No. 20, executed in Caguas, Puerto Rico, before Notary Rafael Cintrón Lastra.

"5. Julio Rivas Soto acquired the property on February 6, 1931, at a public sale. On February 9, 1931, the marshal of the former District Court of Humacao executed deed No. 26 for the judicial sale of the property in favor of Julio Rivas Soto, in Humacao, Puerto Rico, before Notary Antonio L. López.

"6. On June 6, 1931, Julio Rivas Soto presented his deed of judicial sale for registration in the Registry of Property of Caguas, Puerto Rico, record of which was denied on the ground that the property which was the object of the sale was recorded in favor of Prudencio Ramos, who, as stated above, had recorded the same on February 19, 1931.

"7. Without having recorded his title, Julio Rivas Soto took possession of the property and sold it to Domingo García and Joaquina Rivera by deed No. 1, executed on January 3, 1933, in Caguas, Puerto Rico, before Notary Julio Reguero González.

"8. Thereafter, by deed No. 30 of July 21, 1936, executed in Caguas, Puerto Rico, before Notary Ángel Fernández Sánchez, Domingo García and his wife, Joaquina Rivera, sold the property to the defendant-counter-plaintiff Pedro Ríos Rodríguez, who has held the possession ever since, has paid taxes thereon, and obtained a tax exemption."

In its conclusions of law the court held: (a) That the mortgage foreclosure proceeding prosecuted by mortgagee, Julio Rivas Soto, from whom defendant derives title, was valid and was not tainted with nullity; (b) that § 71 of

the Mortgage Law does not apply here, since the mortgage foreclosure proceeding was instituted prior to the date of registration in the Registry of the title of plaintiff's predecessor in interest; and (c) further, that the defendant had acquired the property by ordinary prescription, wherefore the action of revendication has prescribed.

Plaintiff-counter-defendant-appellant herein assigns thirty-one errors. In the discussion of the first error appellant takes up jointly the first twenty-three. The main attack is against the admission in evidence of the deed of judicial sale executed by the marshal in the mortgage foreclosure proceeding in favor of the foreclosing party, Julio Rivas Soto, as well as the subsequent deeds of conveyance derived from the former, on the ground that none of those deeds was recorded in the Registry of Property.

Appellant's contention is untenable. Section 389 of the Mortgage Law invoked by him provides:

"Section 389. After this law shall go into effect, no document or instrument which has not been recorded in the registry whereby rights subject to record under said law, are constituted, transferred, acknowledged, modified, or discharged, shall be admitted in ordinary or special courts or tribunals, in councils or in the offices of the Government, if the purpose of the presentation should be to enforce to the prejudice of a third person a right which should have been recorded.

"Notwithstanding the provisions of the foregoing article, an unrecorded document which should have been recorded may be admitted to the prejudice of a third person, if the only purpose of the presentation shall be to corroborate a subsequent instrument which may have been recorded.

"Such an instrument may also be admitted to record when presented for the purpose of securing the annulment and consequent cancellation of a record which prevents the record thereof."

The provisions of the first paragraph of this section do not apply. Plaintiff-appellant is not a third-party mortgagee. When his predecessor in interest acquired the prop-

erty, it was subject to a mortgage duly recorded in the Registry. Neither appellant nor his predecessor in interest is, in respect to the mortgage, in a better or different position than the mortgagor from whom they derive title. They merely subrogated themselves in the place and stead of the conveyor. Therefore, plaintiff cannot plead his status as a third person in the foreclosure of the recorded mortgage lien. *Arroyo v. Zavala*, 40 P.R.R. 257.

On the other hand, according to the provisions of the third paragraph of the afore-cited section, an unrecorded instrument may be admitted when presented for the purpose of securing the amendment and consequent cancellation of a record which prevents the record thereof. What defendant-appellee did was precisely to request in the counterclaim the annulment and consequent cancellation of the entry in the Registry in favor of appellant which prevented the record of his title. The unrecorded instrument or instruments were admissible for that purpose. See Judgments of March 29 and April 18, 1921 of the Supreme Court of Spain. Moreover, appellant himself alleged in his complaint that appellee's title was void and requested the corresponding judicial declaration to that effect. We fail to see how the trial court could have considered this question without having before it, as evidence received, the title, the validity of which is challenged.

In view of the foregoing, we must conclude that the first twenty-three errors were not committed.

The twenty-fourth error challenges the second conclusion of law made by the trial court, which is, that § 71 of the Mortgage Law did not apply to the mortgage foreclosure proceeding filed by the mortgagee on the ground that appellant's predecessor in interest was not a purchaser pendente lite.

The mortgage foreclosure proceeding was instituted on September 4, 1930. Plaintiff-appellant's predecessor in interest acquired the mortgaged property on March 29, 1930,

that is, prior to the commencement of the foreclosure proceeding, and it was not until February 19, 1931, that he recorded his title in the Registry, that is, after termination of the foreclosure proceeding. Notice of this proceeding was served on Domingo García and his wife, Joaquina Rivera, who according to the Registry of Property were the sole owners. Subsequently, and during the pendency of the mortgage foreclosure, notice was served on Gerardo Calderón, who recorded his title on September 5, 1930. The lower court did not therefore err in ruling that appellant's predecessor in interest was not a purchaser pendente lite, and, *consequently*, that the foreclosure proceeding was not void for noncompliance with § 71 of the Mortgage Law. *González* v. *Ortiz and The People*, 47 P.R.R. 806; *Luengo* v. *Acosta*, 56 P.R.R. 878; *Vizcarrondo* v. *Luengo*, 63 P.R.R. 194.

■ The twenty-sixth error challenges the pronouncement relating to prescription. The lower court held that defendant-appellee had acquired ownership of the property in litigation by ordinary prescription.

The uncontroverted facts show that the deed of judicial sale in favor of mortgagee Julio Rivas Soto was executed on February 9, 1931. Approximately four months thereafter, namely, June 6 of that year, Rivas Soto presented the deed of judicial sale in the Registry, and its registration was denied on the ground that the property was recorded in favor of Prudencio Ramos, appellant's predecessor in interest, since February 19, 1931.[1] Rivas Soto had taken possession of the property and on January 3, 1933, sold it to Domingo García and his wife, Joaquina Rivera, and thereafter the latter sold it on July 21, 1936, to defendant-appellee, Pedro Ríos Rodríguez, who has held the possession ever since. The

---

[1] In *Hernández* v. *Registrar*, 17 P.R.R. 20, and in *Viera* v. *Registrar*, 22 P.R.R. 540, we held that, in conformity with § 20 of the Mortgage Law, the record of a deed of sale of property executed by the marshal in a foreclosure proceeding should be denied when the property is already recorded in the name of a person other than the defendants in whose name the sale was made.

action of revendication was filed in March, 1953. The appellee has therefore possessed the property for more than ten years, from the time he acquired it in 1936, up to the date of the filing of the complaint.

Section 1830 of the Civil Code (1930 ed.) provides that: "Ownership and other property rights are acquired by prescription in the manner and under the conditions specified by law," and under § 1857 of the same Code ownership and other property rights in real property "shall prescribe by possession for ten years as to persons present, and for twenty years with regard to those absent, with good faith and with a proper title." Conceding that defendant-appellee meets the requirement of continuous possession during the legal period as well as the requirement of a proper title, we cannot agree with the trial court that the possession has been in good faith. If the latter is lacking, there is no ordinary prescription. *Sauri* v. *Echevarría*, 51 P.R.R. 71. According to § 1850 of the Civil Code, "Good faith of the possessor consists in his belief that the person from whom he received the thing was the owner of the same, and could convey his title." When appellee made the purchase, he knew from the Registry that neither the vendor nor the person from whom the latter derived title could convey the ownership of the property because the title was recorded in the name of a different person (plaintiff-appellant's predecessor in interest), and, attributing to him that knowledge by reason of the fact that he could not ignore what was made public in the Registry, [2] his possession cannot be considered as being in good faith. The lower court therefore

---

[2] "The Registry of Property is, in fact, the only means, actually effective, which accredits the preexistence of the right and makes it truly public." 1 Morell, *Legislación Hipotecaria*, p. 59. The publicity of the Registry "means, in the first place, the promulgation or notification to all of the legal existence of the fact or of the right involved in order that it be known and respected by all, making public that which is private, and, in the second place, the right of all to resort to the Registry in order to learn that which binds them or may interest them." Morell, *op. cit.*, p. 346.

erred in holding that the appellee had acquired by prescription the title to the property in litigation.

■ We have stated above that plaintiff-appellant's predecessor in interest was not a purchaser pendente lite, and that § 71 of the Mortgage Law did not therefore apply. Regarding prior purchasers, § 129 of the same legal corpus provides the following:

"Section 129. If before the creditor shall enforce his claim against the estate mortgaged, the property should pass into the hands of a third possessor, all proceedings prescribed in the foregoing article shall be directed against him, as the person subrogated to the rights of the debtor."

But since the mortgagee did not learn from the Registry that the mortgaged property had passed into the hands of plaintiff-appellant or his predecessor in interest, the proceedings referred to in § 128 of the Law could not be directed against the latter.[3]

■ We are therefore dealing with a case of a double sale. One, the sale executed by the marshal in the name of the mortgagor.[4] Defendant-appellee's unrecorded title is derived from this sale. And the other, the sale executed by the owner and mortgagor himself to a third person who in turn conveyed it to plaintiff-appellant's predecessor in interest, which is recorded in the Registry. The rights of the respective purchasers must therefore be determined in the light of the provisions of § 1362 of the Civil Code,[5] according to which if the same real property has been sold to different

---

[3] Section 170 of the Regulations provides that the order to pay shall be directed against the persons who, according to the certificate of the registrar, are in possession of the mortgaged property whether it is in the hands of the debtor, or whether it has been transferred to a third person, in whole or in part.

[4] A deed of sale executed by a judicial authority does not confer on the purchaser privileges or powers which exceed the common or ordinary privileges or powers of every transaction of sale. Judgment of December 26, 1910 of the Supreme Court of Spain.

[5] This Section provides:

"Section 1362. If the same thing should have been sold to different vendees, the ownership shall be transferred to the person who may have

vendees, "it shall belong to the person acquiring it who first recorded it in the registry." This provision establishes a preference in respect to the priority of registration in the Registry of Property. Such preference is, however, conditioned on the existence of good faith. If this requirement is lacking, the preference should be deemed to be ineffective and, consequently, the other pertinent rules of § 1362, copied in footnote 5, should be applied. *Saurí* v. *Echevarría, supra; People* v. *Hernández,* 16 P.R.R. 252; Judgments of May 13, 1908, November 29, 1928, and October 31, 1929 of the Supreme Court of Spain.

The lower court made no pronouncement to the effect that the purchase by plaintiff-appellant's predecessor in interest was made in bad faith. The appellee did not raise this question in his averments, nor is there any proof in the record of bad faith in the purchase transaction made by plaintiff-appellant's predecessor in interest. Consequently, we are forced to conclude that since the latter is a purchaser in good faith, his recorded title has preference over appellee's unrecorded title, pursuant to the provisions of § 1362 of the Civil Code. In failing to so decide, the trial court also committed error.[6]

---

first taken possession thereof in good faith, if it should be personal property.

"Should it be real property, it shall belong to the person acquiring it who first recorded it in the registry.

"Should there be no entry, the property shall belong to the person who first took possession of it in good faith, and, in the absence thereof, to the person who presents the oldest title, provided there is good faith."

[6] We realize that the rights of a mortgagee who resorts to the summary foreclosure proceeding provided by the Mortgage Law to collect his credit may, in a case like this, be left unprotected. The need for incorporating some amendments in our Mortgage Law to avoid such a juridical anomaly and to afford a greater guarantee of the effectiveness of that legal proceeding, has already been pointed out by professor Luis Muñoz Morales in his treatise on *Derecho Hipotecario,* vol. 2, p. 259, as follows:

"b. In the second instance, namely, when the sale is carried out after commencement of the proceeding, § 175 of the Mortgage Law Regulations in the last subparagraph provides:

" 'If, during the prosecution of the proceedings, the estate or any of the estates mortgaged should pass into the hands of a third

In view of the foregoing, the judgment appealed from will be reversed and another rendered instead sustaining the complaint. However, since the trial court made no conclusions on the second and third causes of action set forth in the complaint, the case will be remanded to the lower

person, the latter may, upon establishing the record of his title, apply for permission to examine the record in the office of the clerk of the court, and the court shall grant it, without suspending the course of the proceedings, subsequent proceedings being addressed to him as subrogated to the rights and obligations of his predecessor in interest.'

"In view of the steps of the summary proceeding, we fail to see the practical application of the provision of this section of the Regulations, for the only step that must be taken with regard to the debtor is the service of process and *none other*. It is clear that the purchaser may resort to the office of the clerk of the court and examine the record, as may be done nowadays by any interested party, but he cannot appear or intervene in any manner whatever except to deposit the amount of the claim before the auction is carried out and to request the cancellation of the mortgage. However, the mortgagee may ignore and does ignore the sale or conveyance if the purchaser does not notify him of his own volition; and in the event the purchaser records his title before the auction or adjudication and sale of the property is carried out, the conflict then arises when the deed of judicial sale is presented to the Registry for registration.

"There would be no question if there were in the Registry any proof that a proceeding for the collection of the mortgage has been instituted. Provision for such a contingency is made in the new Mortgage Law of Spain (Section 131, Rule 4, No. 2), in which in referring to the certificate of the Registry which must be attached to the initial writing, it is provided that the Registrar shall set forth, by means of a marginal entry, that this certificate has been issued stating the date and commencement of the proceeding referred to.

"To this same end and in agreement with this precedent, the director of the Code Commission, in the bill for the Mortgage Code submitted to the Legislative Assembly of Puerto Rico in the 1927 and 1929 sessions (S. B. 121 and S. B. 77), proposed the following addition to § 169 of the Mortgage Law Regulations:

"'The Registrar shall set forth by means of a marginal note, that he has issued a certificate showing the date and purpose for which it is requested. Such marginal note shall be cancelled if within fifteen days from the date thereof the filing of the complaint in the district court is not evidenced by a certificate of the clerk of the court . . . Such entry shall serve as notice to any third person who may thereafter purchase the mortgaged property.' (See p. 104 of the bill for the Mortgage Code.)

"As a result of that amendment, it was also proposed that the following final paragraph be added to § 129 of the Law:

court with directions to formulate such conclusions and to render judgment in conformity with the terms of this opinion.

The judgment appealed from will be reversed and the case remanded to the lower court for proper further proceedings.

Mr. Justice Belaval dissented.

RAMÓN VALCOURT QUESTEL, Plaintiff and Appellant, *v.* JOSÉ ALFREDO IGLESIAS DE LA CRUZ ET AL., Defendants and Appellees.

No. 11152.   Argued May 3, 1954.—Decided August 31, 1955.

*Antonio J. Amadeo* for appellant.   *Miranda Esteve & Martínez Álvarez* for appellees.

## JUDGMENT

The appeal taken from the judgment rendered by the San Juan Part of the Superior Court under date of December 29, 1952, in the above-entitled case, is dismissed for lack of jurisdiction.

" 'But if the conveyance is made by the debtor after the creditor has commenced the mortgage foreclosure proceeding, the entry of the certificate and complaint referred to in the preceding section shall then be sufficient notice to the third possessor, and the record entered in his favor shall be cancelled in order that the title of award or judicial sale may be recorded.' (Mortgage Code bill, § 200, p. 107.)

"In support of those amendments, the director in his report to the Code Commission and to the Legislative Assembly stated as follows (p. 15):

" 'The Registrar is hereby directed to enter a marginal note of the certificate issued by him for the purpose of instituting the summary proceeding. Such entry will serve as notice to any subsequent purchaser and prevent that the action of the creditor be defeated by the conveyance by the debtor after demand to pay is made. It so happens nowadays that when the creditor has reached the stage of the auction sale he learns that the debtor has conveyed the property to a third party, who has recorded it and who has not been notified, nor has been a party to the proceeding because

---

the foreclosing party knew nothing about it, and this action prevents the legal registration of the property in the name of the successful bidder. This amendment implies the amendment to § 128 of the Act.'

"Those amendments were discussed and accepted by the Senate Judiciary Committee in its report of April 4, 1929. (See Committee report, p. 5.)

"But that bill could not be discussed by our Legislative Assembly, and after so many years no action has been taken on that and other necessary amendments to the Mortgage Law, nor does it seem that any attention has been given to the amendment made in this connection by the Spanish Law of 1909 despite the lapse of thirty-seven years (up to 1946)."

The amendments proposed in 1927 and 1929 would not cover a third person who acquires the property before the foreclosure proceeding is instituted but does not record the title until after its commencement or termination. With a view to fill this gap, it would be advisable to make the corresponding amendments in other sections of the Act.